# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| TAMIKA WILLIAMS, ) | |
| o.b.o. N.W., a minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 15-CV-00571-DGK-SSA |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Tamika Williams ("Williams"), on behalf of her child N.W. ("N.W."), petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). N.W.'s mother applied for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f, on behalf of N.W. The administrative law judge ("ALJ") found N.W. had one severe impairment, Attention Deficit Hyperactivity Disorder ("ADHD"). The ALJ found that this impairment did not functionally equal the severity of the listings.

As explained below, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is therefore AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Williams filed the pending application on July 18, 2012, alleging a disability onset date of July 26, 2009. The Commissioner denied the applications at the initial claim level, and Williams appealed the denial to an ALJ. On January 7, 2014, the ALJ held a hearing in which

Williams amended the alleged disability onset date to Plaintiff's application date, July 18, 2012.[1]
On February 21, 2014, the ALJ issued a decision finding N.W. was not disabled. The Appeals Council denied Williams' request for review on June 5, 2015, leaving the ALJ's decision as the Commissioner's final decision. Williams has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Substantial evidence is less than a preponderance, but is enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a three-step sequential evaluation process to determine whether a child is disabled. This three-step sequence considers whether: (1) the child is engaged in any substantial gainful activity; (2) the child has an impairment that is "severe"; and (3) the

---

[1] The ALJ noted that the record contains a prior application for SSI that was denied. After a review of the record, the ALJ declined to reopen Williams' prior application due to the amended alleged onset date and res judicata. R. at 11.

child's impairment is medically or functionally equivalent[2] in severity to an impairment listed in the disability regulations. *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 721 (8th Cir. 2005) (citing 20 C.F.R. § 416.924).

Here, Williams only contests the functional equivalency of N.W.'s impairment, and the Court only addresses the third step of the evaluation. *See Moore*, 413 F.3d at 721. At step three, the ALJ found that N.W. had a marked limitation in "acquiring and using information," but a less-than-marked limitation in "attending and completing tasks."[3] Williams argues the latter finding was not supported by substantial evidence. Specifically, she asserts the ALJ erred by: (1) failing to address the findings of N.W.'s treating providers; (2) assigning little weight to the opinions of Plaintiff's teachers; (3) relying on the opinions of non-examining physicians; and (4) coming to a conclusion that was inconsistent with Plaintiff's school records. As outlined below, these arguments are without merit.

### I. The ALJ properly addressed the findings of N.W.'s treating providers.

Williams first argues the ALJ "fail[ed] to address the findings of N.W.'s treating providers." Pl.'s Br. 17 (Doc. 8). Specifically, Williams argues the ALJ failed to take into consideration the opinions of several medical professionals indicating that N.W. had a marked limitation in attending and completing tasks. *Id.* at 15.

---

[2] In determining whether an impairment functionally equals the listings, the ALJ must assess the child's functioning in six domains, including "attending and completing tasks." 20 C.F.R. § 416.926a(b)(1)(ii). An impairment functionally equals the listings if the child has "'marked' limitations in two of [the six] domains . . . or an 'extreme' limitation in one domain." *Id.* § 416.926a(d). A "marked" limitation exists when an impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i).

[3] The "attending and completing tasks" domain refers to how well a child is able to focus and maintain attention, and how well the child begins, carries through, and finishes his activities, including the pace at which the child performs activities and the ease with which he changes them. *Id.* § 416.926a(h).

3

"[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).

Here, the ALJ thoroughly addressed the findings of treating physician Latha Venkatesh, M.D. ("Dr. Venkatesh"). R. at 17-20. The ALJ also specifically cited to the report of Craig Kindiger, L.P.C., R. at 17 (citing exhibit B6F at 18-19), and to exhibits containing the reports of Kortney Carr, L.M.S.W., and Leon Frankling, L.C.S.W. R. at 17-19, 22 (citing exhibits B6F and B13F). The ALJ considered evidence from these exhibits that both supported and detracted from his final determination. R. at 17 (citing exhibits B6F and B13F as "indicat[ing] the claimant has a history of emotional and attention problems" and for reports that Plaintiff has "trouble sitting still, paying attention, listening, and behaving appropriately at school").

Thus, the record demonstrates the ALJ sufficiently considered the treating providers' opinions. This argument is without merit.

**II. The ALJ properly assigned little weight to N.W.'s teacher evaluations.**

Williams argues that questionnaires completed by two of N.W.'s teachers, Nicole Chappell ("Ms. Chappell") and Brenda Preston ("Ms. Preston"), support a finding of a marked limitation in attending and completing tasks. Pl.'s Br. 16. Williams asserts the ALJ erred by "failing to explain why the opinions of Ms. Chappell and Ms. Preston were entitled to little weight." *Id.* at 17.

As teachers, Ms. Chappell and Ms. Preston are not "acceptable medical sources," but instead are "other sources" to be considered by the ALJ. 20 C.F.R. § 416.913(d)(2). In considering opinions from teachers, the ALJ may consider several factors, including the nature and extent of the relationship between the source and the individual, the degree to which the

source presents relevant evidence to support his or her opinion, and whether the opinion is consistent with other evidence. Social Security Ruling 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006); *see also Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) ("In determining what weight to give to 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record.").

Here, the ALJ gave these opinions little weight because they were "not specific" and "inconsistent with claimant's treatment notes from that period." R. at 19. In both questionnaires, N.W.'s teachers indicated that he had marked to extreme limitations in almost every area of functioning. R. at 491-92, 573-74. Yet medical records indicated that, after being prescribed medication for his ADHD,[4] N.W. was doing well in school, following rules, having no trouble staying on task, and being respectful of teachers. R. at 429, 432.

Because other portions of the record contradicted the teachers' opinions, the ALJ was entitled to give them less weight. Thus, this was not error.

### III. The ALJ did not err in affording some weight to the opinions of medical consultants.

Williams next argues the ALJ erred in relying on the opinions of state agency medical consultants in finding he had a less-than-marked limitation in his ability to attend and complete

---

[4]The ALJ also considered N.W.'s compliance (or lack thereof) with his physician's treatment and medication recommendations in finding that N.W. had a less-than-marked limitation in attending and completing tasks. "[I]n considering whether a claimant's impairments meet, medically equal, or functionally equal the listing for ADHD, numerous courts have taken into account the positive impact that medication has on the claimant's limitations." *Luna ex rel. A.L. v. Astrue*, No. 11-1137(PAM/JJK), 2013 WL 358883, at *19 (D. Minn. Jan. 8, 2013) (collecting cases). Here, the ALJ noted that N.W. was "not entirely compliant with recommended treatment and medication," and that "the record documents improvement in the claimant's condition with treatment and medication compliance." R. at 19 (citing R. at 407, 419, 464, 468). After being prescribed medication and treatment for his ADHD, N.W. reported doing well in school and having little trouble staying on task. R. at 17, 429, 432. But, when N.W.'s mother later reported he was having difficulty paying attention and behaving appropriately, "Dr. Venkatesh noted she had not seen the claimant since October 2012 and the claimant's mother admitted the claimant had not taken his medication for a while." R. at 17, 419.

tasks because these opinions were outdated and not supported by sufficient explanation. Pl.'s Br. 12 (Doc. 8).

While ALJs are "not bound by any findings made by State agency medical or psychological consultants," they "must consider findings and other opinions of [State agency consultants] as opinion evidence." 20 C.F.R. § 416.927(e)(2)(i). These findings must be accorded less weight where the consultant did not have access to relevant medical records. *See McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011).

In November of 2012, state agency medical consultants Aine Kresneck, Ph.D. ("Dr. Kresneck"), and Jean Diemer, M.D. ("Dr. Diemer"), reviewed N.W.'s records and completed a childhood disability form. R. at 60-67. On this form, Drs. Kresneck and Diemer reported that N.W.'s condition did "not cause marked and severe functional limitations." R. at 65. The ALJ found that these opinions were "mostly consistent with the weight of the evidence and based on their respective areas of expertise" and so gave them "some weight."[5] R. at 18. These reports were consistent with treating physician reports that N.W. had goal-directed thoughts, did well in school, followed rules, had no trouble staying on task, and was respectful of teachers. R. at 413-14, 429, 432. Though the consultants did not have access to N.W.'s subsequent school records, their opinions were consistent with the medical record as a whole, and the ALJ did not err in affording them *some* weight. *Cf. Moellering v. Colvin*, No. 4:13CV1837 ACL, 2015 WL 1299245, at *20 (E.D. Mo. Mar. 23, 2015) (finding error where ALJ gave *great* weight to consulting physician who did not have access to a number of significant medical records when rendering opinion).

---

[5] The ALJ even gave N.W. "the benefit of the doubt and assessed him *more significant limitations* [than assessed by the consulting doctors] in the acquiring and using information and caring for himself domains." R. at 18 (emphasis added).

**IV. The ALJ's determination is not subject to reversal merely because N.W.'s school records support an opposite result.**

Finally, Williams argues the ALJ's finding is inconsistent with N.W.'s school records. Williams contends any reports that N.W. was "doing well" was a result of her "lack of information concerning the difficulties N.W. was having." Pl.'s Br. 15 (Doc. 8).

As outlined above, the ALJ properly based his opinion on the assessments of treating physicians and state agency medical consultants in determining that N.W. had a less-than-marked limitation in attending and completing tasks. The Court may reverse this decision only if it falls outside of the available zone of choice, and the ALJ's determination is not outside this zone simply because N.W.'s school records point to an alternate outcome. *Buckner*, 646 F.3d at 556. Thus, this argument is without merit.

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  November 7, 2016               /s/ Greg Kays
                                                                      GREG KAYS, CHIEF JUDGE
                                                                      UNITED STATES DISTRICT COURT